UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLEN M. PEAK,

    Plaintiff,

v.            Case No. 1:04-CV-690
               Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security

income (SSI).[1]

    Plaintiff was born on January 5, 1942 and obtained a GED (AR 58, 91).[2]  She filed

two previous claims for benefits.  She first applied for DIB and SSI on October 19, 1993 (AR 13).

The claim was denied initially and at all steps of the administrative review process (AR 13).  The

ALJ's decision denying benefits was affirmed by this court on February 27, 1998. *See Peak v.*

*Commissioner of Social Security*, No. 1:96-cv-739 (W.D. Mich.) (Order 2/27/98).  Plaintiff's second

application for SSI was filed on September 27, 2000, alleging an inability to work since January 1,

_____

[1]  The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2]  Citations to the administrative record will be referenced as (AR "page #").

2000 (AR 14).  The claim was denied initially (AR 14).  A hearing was held before ALJ Sharon Bauer on July 2, 2002 (AR 14).  ALJ Bauer denied plaintiff's claim in a decision entered August 8, 2002 (AR 14).  At that time, ALJ  Bauer found that plaintiff had been performing substantial gainful activity and had been doing so since her alleged onset date of January 1, 2000 (AR 14).  Plaintiff did not appeal this decision (AR 14).

Plaintiff filed her present (third) application for DIB and SSI on August 22, 2002 (AR 13).  Plaintiff now states that she became disabled on May 1, 2002 (AR 58).  Plaintiff had previous employment as a  professional maintenance worker (cleaning), home health care worker and telephone surveyor  (AR 107-12). Plaintiff identified her disabling conditions as pain (which makes her irritable and upset around people), pain in back, cramps, stiff neck, pain in feet and leg aches (AR 85).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on April 9, 2004 (AR 13-20).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based

upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for

> at least twelve months, and the impairment meets a listed impairment,
> plaintiff is presumed to be disabled regardless of age, education or
> work experience. Fourth, if the plaintiff's impairment does not
> prevent her from doing her past relevant work, plaintiff is not
> disabled. For the fifth and final step, even if the plaintiff's impairment
> does prevent her from doing her past relevant work, if other work
> exists in the national economy that plaintiff can perform, plaintiff is
> not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since January 1, 2003 (AR 20). The ALJ rejected plaintiff's alleged onset date of May 1, 2002 and applied the doctrine of *res judicata* through August 8, 2002, the date of the prior decision by ALJ Bauer (AR 19). Second, the ALJ found that plaintiff suffered from severe impairments of degenerative disc disease of the cervical and lumbar spine (AR 20). At the third step, the ALJ found that plaintiff did

not have an impairment or combination of impairments that met or equaled the requirements of the

Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).

    The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform the requirements of work activity except for lifting and/or carrying more
> than 20 pounds occasionally and 10 pounds frequently; climbing ladders, ropes, or
> scaffolds; climbing ramps or stairs more than occasionally; and working with
> concentrated exposure to wetness/humidity or temperature extremes.

(AR 20). The ALJ found that plaintiff's past relevant work as a home healthcare aide did not

require the performance of work-related activities precluded by her residual functional capacity (AR

20). The ALJ also found that plaintiff's medically determinable impairments did not prevent her

from performing her past relevant work (AR 20). The ALJ further found that plaintiff's allegation

of the inability to perform sustained work activity was not credible (AR 20). Accordingly, the ALJ

determined that plaintiff was not under a "disability" as defined by the Social Security Act and

entered a decision denying benefits (AR 20).

## III. ANALYSIS

    Plaintiff states that she has had back pain since giving birth to her daughter in 1964

and that the pain has become worse over the years, due in part to an automobile accident in 1970.

Plaintiff states that she has a hard time working with her back pain, arthritis (in the back, arms, legs,

neck and feet), frequent headaches and "bad nerves" related to the death of her son.

### A.   Plaintiff's allegation of disabling pain

    An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary

of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced
> to a matter of neat calculations. There are no x-rays that can be taken

5

> that would objectively show the precise level of agony that an
> individual is experiencing.  Hence, in evaluating the intensity and
> persistence of pain, both physicians and laymen alike, must often
> engage in guesswork.

*Id.* at 1369.  Despite the inexact nature of measuring a claimant's pain,  the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.  "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of  disability."  *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987).  In  *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986),  the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test  "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain."  *Id.*

6

**First prong of the *Duncan* test**

The ALJ found that plaintiff suffered from severe impairments of degenerative disc disease of the cervical and lumbar spine (AR 20). Plaintiff has presented objective evidence of an underlying medical condition. Accordingly, she has satisfied the first prong of the *Duncan* test.

**Second prong of the *Duncan* test**

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of his pain. Plaintiff has failed to meet this requirement. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. In October 2002, an examining physician, Robert C. Hazzard, D.O., found one reliable indicator (reduced range of motion in the lumbar spine) (AR 158-60). Dr. Hazzard found that plaintiff had full extension and flexion of the cervical spine and full range of motion in the shoulders (AR 159). The doctor noted that plaintiff's range of testing in her lumbar spine was limited to ten degrees with respect to extension, flexion and lateral flexion, and that she had a positive response to straight leg raising testing (AR 18, 159). However, there were no other deficiencies in her musculoskeletal or neurologic examinations (AR 159). Plaintiff required a small amount of help getting onto the examination table, but was otherwise normal (e.g., normal gait, able to walk without difficulty, no difficulty changing clothes, intact fine motor activity in hands) (AR 160).

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that plaintiff's typical daily activities included: living in an apartment with her grandson, preparing meals, household chores (washing dishes and dusting furniture), visiting with others via the telephone, reading and watching television (AR 16, 114-18, 128-33, 236). Plaintiff remains able to drive, shop, vacuum the carpet, manage monthly household financial matters, attend to her personal needs without assistance, eat out on occasion, and fish with her grandson (AR 16, 202-06, 236).

The severity of plaintiff's pain may also be measured by the medications necessary to alleviate the pain. Mild medication and infrequent doses tend to show claimant does not have disabling pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir 1990); *Kimbrough v. Secretary of Health and Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986). Here, plaintiff took only over-the-counter pain relievers (i.e., Tylenol, Aleve and rubbing alcohol) (AR 17, 224). The use of these non-prescription medications suggests that plaintiff does not suffer from disabling pain. *See  Pena v. Commissioner*,  No. 98-1833, 1999 WL 775832 at *3 (6th Cir. Sept. 24, 1999) (reliance on non-prescription medication did not support a claim of disabling pain); *Blacha*, 927 F.2d at  231 (claimant's use of mild medication (aspirin) undercut his complaints of disabling pain).

Finally, plaintiff also fails to meet the second part of the second prong of the *Duncan* test because she provides no objective medical evidence indicating that his condition "is of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. An x-ray indicated that she suffered from minimal superior L4 degenerative change with no apparent

disc space compromise and minimal lumbar dextroscoliosis (AR 160-61). There was no nerve root compression or other indication of a structural deformity (AR 161). This condition is not of a severity which can reasonably be expected to give rise to the alleged disabling pain. *See*, *e.g.*, *Williams v. Sullivan*, No. 89-3796, 1990 WL 75233 (6th Cir. June 6. 1990) (second prong of *Duncan* test not satisfied by mild degenerative changes in lumbosacral spine); *McInally v. Bowen*, No. 87-1472, 1988 WL 54085 (6th Cir. May 31, 1988) (mild degenerative changes in spine with no evidence of nerve root irritation is not of such severity as to reasonably produce disabling pain); *Barrow v. Secretary of Health & Human Servs.*, No. 87-6032, 1988 WL 103333 at *4 (6th Cir. Oct. 4, 1988) (degenerative disc changes in thoracic spine with no objective evidence of nerve root irritation or muscle wasting does not satisfy the *Duncan* standard); *Duncan*, 801 F.2d at 853-54 (mild degenerative changes in lumbar and cervical spinal regions are not so severe that they could be reasonably expected to produce disabling pain).

The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

### B.      Plaintiff's allegation of "bad nerves"

Finally, plaintiff contends that her "nerves" have worsened since her son's death on January 5, 2004 (AR 226). Plaintiff testified at the hearing that she could not perform home health aide work or professional maintenance work since the death of her son because her "nerves are too bad" and it would be bad for her clients (AR 226, 239). Plaintiff also testified that her mental ability to work had not been a problem until recently, following the death of her son (AR 240). Plaintiff's

previous testimony established that she lived with her son and that she had custody of her grandson (her daughter's child) (AR 181-82). The ALJ interpreted this claim as related to plaintiff's "grief reaction" to her son's recent death and found that this was not expected to preclude her performance of work activity for twelve continuous months (AR 18).  The ALJ discounted plaintiff's claim because she sought no medical treatment for this complaint (AR 18).

The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants, such as plaintiff, who are unrepresented by counsel.  *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant).

The record reflects that plaintiff's son died on January 5, 2004 (AR 226).  Plaintiff appeared before the ALJ on  March 23, 2004, less than three months after the death (AR 220).  The ALJ recognized plaintiff's references to her "nerves" as an indication of a mental condition, but discounted this condition, in part, because plaintiff did not seek treatment (AR 18, 240).  The failure to seek out psychiatric treatment is not a persuasive reason, in and of itself, to ignore plaintiff's testimony regarding her mental condition.[3]  The ALJ had the discretion to obtain a consultative examination to assist in resolving plaintiff's claim.  *See* 20 C.F.R. § 404.1517 ("[i]f your medical sources cannot . . . give us sufficient medical evidence about your impairment for us to determine whether you are disabled . . . we may ask you to have one or more physical or mental examinations or tests").  However, there is no requirement for an ALJ to order a consultative examination at

---

[3] As the Sixth Circuit observed in *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (1989), "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

government expense unless the record establishes that such an examination is necessary to enable the ALJ to make a disability decision. *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

Under the facts in this case, the court concludes that the ALJ was required to order a consultative examination as part of his "special duty" to develop the administrative record. Plaintiff, proceeding *pro se*, testified about her mental problems arising from the death of her son, who died less than three months before the administrative hearing.  The ALJ recognized the existence of a potential mental impairment, questioned plaintiff about it at the hearing and, without any medical evidence, characterized her condition as a "grief reaction" to her son's recent death that was not expected to preclude her performance of work activity for twelve continuous months (AR 18, 240).

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should obtain a consultative examination regarding plaintiff's mental condition and re-evaluate her alleged mental impairment.

## IV.    Recommendation

I  respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.

Dated:  November 4, 2005                    /s/ Hugh W. Brenneman, Jr.
                                            Hugh W. Brenneman, Jr.
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).